# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

VINCENT JOHNSON, ET AL.                           CIVIL ACTION NO.

VERSUS                                            14-CV-102-SDD-SCR

TRANSWOOD, INC., ET AL.

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] by Defendant, Axiall, LLC ("Axiall").  Plaintiffs Tremechia Butler, Raven Johnson, and Vilencia Johnson ("Plaintiffs") have filed an *Opposition,*[2] to which Axiall filed a *Reply*.[3] For the following reasons, the Court finds that Axiall's motion should be granted.

## I.    FACTUAL BACKGROUND

On January 18, 2013, Vincent Johnson ("Johnson") was unloading powdered lime from his truck at Axiall's chemical manufacturing facility in Plaquemine, Louisiana. On this date, Johnson became seriously injured after becoming entangled with the offloading system equipment on the tractor truck he owned.   There were no witnesses to this accident.  Johnson ultimately died from his injuries on March 26, 2014, after this lawsuit had been filed.[4]  Plaintiffs filed suit against several defendants but specifically allege that Axiall is liable to Plaintiffs for negligent supervision of Johnson and for premises liability under Louisiana law.   Axiall moves for summary judgment on the

---

[1] Rec. Doc. No. 128.
[2] Rec. Doc. No. 139.
[3] Rec. Doc. No. 147.
[4] Rec. Doc. No. 37.
28736

CRITICAL

grounds that it had no duty under the law to warn, supervise, or protect Johnson, and because there is no evidence showing that Axiall's facility contained defects or debris giving rise to premises liability.   The Court exercises diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## II.   LAW AND ANLYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[6]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[7]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[8]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[9]

---

[5] Fed. R. Civ. P. 56(a).
[6] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[7] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[8] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[9] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
28736

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[10]  All reasonable factual inferences are drawn in favor of the nonmoving party.[11]  However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[12]  "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint.'""[13]

## B. Did Axiall Owe a Duty?

To establish liability under Louisiana Civil Code Article 2315, Plaintiffs must show that Axiall owed Johnson a duty, Axiall breached that duty, and Johnson's harm resulted from that breach.  Duty is a question of law.[14]  Courts may rely on the contract terms between the parties to determine the existence and scope of the duties owed.[15]

Prior to the incident giving rise to this lawsuit, Axiall (formerly Georgia Gulf Chemicals & Vinyls, LLC) ordered chemical hydrate in bulk (powdered lime) for water treatment purposes from Carmeuse Lime & Stone, Inc. ("Carmeuse") for delivery to

---

[10] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[11] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[12] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[13] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).

[14] *Smith v. Hall-Houston Oil Co.*, No. 98-3433, 2000 WL 6265 at *2 (E.D. La. Jan. 4, 2000)(citing *Harris v. Pizza Hut*, 455 So.2d 1364, 1371 (La. 1984)).

[15] *Foster v. Sasol North America, Inc.*, No. 13-cv-2813, 2015 WL 338988 at * 2 (W.D. La. Jan. 26, 2015), citing *Dupre v. Chevron, U.S.A., Inc.*, 913 F.Supp. 473, 480 (E.D. La.1996), *aff'd*, 109 F.3d 230 (5th Cir.1997)(citing *Graham v. Amoco Oil Co.*, 21 F.3d 643, 647 (5th Cir. 1994)).

28736

Axiall's facility in Plaquemine, Louisiana.[16]   Pursuant to a Motor Carrier/Shipper Agreement dated January 1, 2009, Carmeuse contracted with Material Delivery Service, Inc. ("MDS") to perform motor carrier transportation services.   Appendix I to this agreement provides the governing Safety Standards which include:  "All contractors picking up or delivering bulk materials to [Carmeuse] will strictly adhere to at least minimum specifications set forth in this standard."[17]

MDS sent driver Johnson to deliver the powdered lime to the Axiall facility on January 18, 2013, pursuant to a Carmeuse Bill of Lading.[18]   An "Independent Contractor Agreement" dated December 14, 2012, identified Johnson as the "CONTRACTOR" and MDS as the "CARRIER", and described "EQUIPMENT" as the truck identified in the *Complaint*.   Johnson agreed, *inter alia*, to operate and maintain his truck and equipment and "do[] all other things necessary to conduct the transportation services provided in this Agreement in accord with all applicable regulations."[19]

The "Job Description for Truck Drivers," dated May 13, 2011, produced by MDS and signed by Vincent Johnson, required Johnson to:   "[p]erform all duties in accordance with company policies and procedures, and comply with all Federal, State and Local regulations for the safe operation of a commercial motor vehicle"; provide "[s]afe and timely transportation of freight from origin to destination"; and perform "[p]roper loading and unloading of freight to assure safety and minimal risk of damage to

---

[16] Rec. Doc. No. 128-3.
[17] Rec. Doc. No. 128-4, CARM00003-CARM00025.
[18] Rec. Doc. No. 128-3.
[19] Rec. Doc. No. 128-5, MDS315-330.

28736

cargo and danger to persons."[20]   It is undisputed that Johnson owned the truck in which he made the delivery to Axiall.   Johnson's truck was equipped with a rotary positive displacement blower and power takeoff system utilized to offload shipments from his trailer.

On January 18, 2013, Johnson arrived at Axiall's facility, reported to the security gate, presented his credentials, drove to have his truck and trailer weighed, and parked his truck on the roadway next to the lime bin for offloading.[21]   Axiall contends that Johnson alone operated the offloading equipment on his truck and did not, at any time, consult with Axiall about any problem or request assistance in offloading his truck.

The "preliminary" expert report prepared by HAAG Engineering, dated November 15, 2014, indicates that Johnson suffered injuries as a result of becoming entangled with the rotating blower/power takeoff shaft assembly, located underneath his truck and extending from the drive shaft.[22]   Axiall contends there is no evidence that Johnson slipped and fell into the shaft assembly under his truck, and there are no electrical systems owned by Axiall in the roadway where Johnson was parked and injured.   Axiall does not dispute that it did not supervise or control Johnson in unloading the lime from his truck.   Additionally, Axiall notes that unloading lime is not an ultrahazardous activity.   Moreover, Axiall cites its Lime System Procedure, which states: "It is the driver's responsibility to hook-up, off-load, and disconnect his truck.   The driver will follow his company's procedures."[23]

Plaintiffs allege that Axiall breached duties to provide Johnson with a safe work

---

[20] Rec. Doc. No. 128-6, p. 1.
[21] *See* Rec. Doc. Nos. 128-8 & 128-9.
[22] Rec. Doc. No. 128-15.
[23] Rec. Doc. No. 128-8.

28736

environment, to abide by applicable safety procedures, to give proper warnings, and to supervise Johnson. Axiall counters that, as Johnson was the owner and operator of his truck and an independent contractor, it had no duty to provide any of these to Johnson and exercised no operational control over Johnson. Axiall argues that Johnson was a visitor to its facility and enjoyed no employment or other special relationship with Axiall. Moreover, as an independent contractor, Johnson was responsible for his own equipment. Thus, under applicable federal and state law, Axiall contends it did not owe any duty to Johnson under the facts of this case.

Plaintiffs also contend that Axiall negligently supervised Johnson and that Axiall retained sufficient operational control over Johnson's activities to trigger liability. Plaintiffs claim that Johnson should have been instructed regarding the amounts of lime to be offloaded, and Axiall exercised control over the lime system operation. Plaintiffs contend that Axiall's manual provides that lime bin levels will be checked so the operator can inform the driver how much lime to unload in each bin. Plaintiffs further contend that Johnson should have been required to check in with the Operator for the area encompassing the accident. Because Johnson was required to check in, unload specific amounts of lime into specific bins, and weigh his truck upon exit, Plaintiffs argue that each step of Johnson's work required some interaction and feedback by Axiall sufficient to establish operational control.[24]

The Court finds that Plaintiffs have failed to carry their burden on this negligence claim against Axiall. Applying the law to the facts of this case, and in light of the clear

---

[24] Plaintiffs cite *Sandbom v. BASF Wyandotte Corp.,*95-0335 (La. App. 1 Cir. 4/30/96), 674 So.2d 349, in support of this argument; however, as Axiall correctly notes, *Sandbom* is distinguishable because it involved injuries caused by the defendant's premises rather than the plaintiff's own equipment, as is the case here.
28736

terms of the documents submitted, Axiall is entitled to summary judgment on this claim. Under Louisiana law, a principal is generally not liable for the conduct of an independent contractor.[25]   There are exceptions where "(1) the liability arises from ultrahazardous activities performed by the contractor on behalf of the principal or (2) the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those acts."[26]

It is undisputed in this case that the first exception does not apply because this case does not involve ultrahazardous activity.   The Fifth Circuit has stated that, "whether [a] case fits within the second exception is a more complicated question."[27] The Fifth Circuit has routinely held that:  "Operational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way."[28]   Moreover, "absent an express or implied order to the contractor to engage in an unsafe work practice leading to an injury, a principal … cannot be liable under the operational control exception."[29]   "In deciding questions of operational control, the court considers both the contract between the parties and the extent to which the principal actually exercises control."[30]

Based on the record before the Court and the contracts among the parties, it is clear that Axiall lacked the type of operational control required for application of this

---

[25] *Coulter v. Texaco, Inc.,* 117 F.3d 909, 911–12 (5th Cir.1997).
[26] *Id.* at 912.
[27] *Ukudi v. McMoran Oil & Gas, L.L.C.*, 587 F. App'x 119, 122 (5th Cir. Sept. 29, 2014).
[28] *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003)(citing *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 270 (5th Cir.1992); *McCormack v. Noble Drilling Corp.*, 608 F.2d 169, 175 n. 9 (5th Cir.1979)).
[29] *Coulter*, 117 F.3d at 912.
[30] *Ukudi*, 587 F. App'x at 122 (citing *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 193 (5th Cir.1991)).
28736

exception.   The contract language cited above clearly places the burden of safety on Johnson.   Further, Plaintiffs' reliance on the testimony of former Axiall employee Lionel Collins, who testified that an incomplete Safe Work Permit was issued to Johnson,[31] misses the mark on Plaintiffs' burden under this theory of negligence.   The Fifth Circuit has held that "operational control only arises if the principal 'exercises direct supervision over the step-by-step process of accomplishing the work.'"[32]   Further, "[d]irect step-by-step supervision refers to the case where the principal substitutes the independent contractor's entire method and manner of operation for one of its own."[33]   It is without question that a principal may specify "that which an independent contractor is to accomplish,"[34] and may monitor work progress.[35]   As such, "the giving of specifications and demand that certain standards be met is insufficient to hold that a principal has retained the right to exercise control."[36]

Thus, the fact that Axiall had specifications for the manner in which the lime was to be offloaded is insufficient as a matter of law to constitute operational control. Further, the fact that Axiall had safety measures in place at its facility is likewise insufficient to demonstrate operational control.   There is simply no evidence before the Court that Axiall exhibited the control described by the cited jurisprudence over Johnson's unloading of the lime.   There is also no evidence connecting an allegedly incomplete Safe Work Permit to Johnson being injured by his own equipment.   The

---

[31] Rec. Doc. No. 139-5.

[32] *Grammer v. Patterson Servs., Inc.*, 860 F.2d 639, 643 (5th Cir. 1988)(quoting *Guillory v. Conoco, Inc.* (521 So.2d 1220, 1223 (La. Ct. App. 3d Cir. 1988)).

[33] *Haynie v. Dynamic Offshore Contractors, Inc.*, 1991 WL 33615 at * 4 (E.D. La. Mar. 7, 1991).

[34] *Grammer*, 860 F.2d at 645.

[35] *See Guillory*, 521 So.2d at 1223.

[36] *Haynie*, at *4.

28736

documents at issue clearly show that it was Johnson's responsibility to hook up, offload, and disconnect his truck.[37]

The Court is guided by Fifth Circuit jurisprudence on this issue.  In *Offord v. L & W Supply Corp.,*[38] a truck driver was injured when he fell off the truck's trailer bed while removing tarps so that the delivery of sheetrock could be unloaded.  The driver brought a negligence action against the company that hired his employer to deliver the sheetrock and the recipient of the delivery.  The plaintiff argued that the defendant Seacoast unreasonably failed to warn him not to climb on top of his truck, failed to provide him with safety fall equipment, or otherwise help him remove the tarp.  He also claimed that Seacoast had a duty to "inform and require plaintiff to follow [Seacoast's] safety rules," which prohibit climbing on top of trucks to remove tarps, and to follow OSHA guidelines.[39]  The district court granted summary judgment in favor of Seacoast, finding as follows:

> [T]he facts presented ... establish only that Seacoast ordered a load of sheetrock from U.S. Gypsum, that U.S. Gypsum contracted with Western Express to deliver the sheetrock to Seacoast, that Western Express employees covered the load with plastic tarps for weather protection, and that Seacoast employees would accept and unload the sheetrock if its condition was found satisfactory upon inspection. [Seacoast's] standard procedure was simply to provide adequate space for untarping, and otherwise rely upon the expertise of the delivery drivers to accomplish this task in accordance with their training, their employer's directives, and any requirements imposed by the contractual arrangement between the shipper and transportation company.[40]

The district court had also found that the plaintiff, "not someone at Seacoast, decided how to remove the tarp" and "that no one forced or directed him to climb up on the load

---

[37] Rec. Doc. No. 128-8.
[38] 358 F. App'x 540 (5th Cir. 2009).
[39] *Id.* at 542.
[40] *Id.*
28736

or did anything that caused him to be on the load."[41]   The plaintiff appealed this decision, arguing that Seacoast wielded operational control over him because "Seacoast exercises complete control of the loading and unloading of loads."[42]

The Fifth Circuit affirmed the district court's grant of summary judgment, finding that the district court correctly concluded that Seacoast did not control the plaintiff's unloading activities:

> The district court was also right that Offord has not established any independent fault on Seacoast's part.  "Generally, the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on the premises and the duty of not exposing such persons to unreasonable risks of injury or harm."  *Manning v. Dillard Dep't Stores, Inc.*, 753 So.2d 163, 165 (La.1999).  The extent of that duty is determined by the particular facts of the individual case.  *Crane v. Exxon*, 613 So.2d 214, 221 (La.Ct.App.1992).  Offord argues that Seacoast negligently failed to provide him with safety equipment and help removing the tarp. In support, he cites several cases in which a principal assumed the duty to provide a safe work environment by actively supervising its independent contractors.  *Id.*;   *Moore v. Safeway*, 700 So.2d 831 (La.Ct.App.1996). For reasons already discussed, these cases are distinguishable.  There is no evidence that Seacoast controlled or actively supervised Offord's work. Offord points to no case imposing a duty on principals to provide safety equipment or assistance to its independent contractors, absent such a showing. *See Davenport v. Amax Nickel, Inc.*, 569 So.2d 23, 28 (La.Ct.App.1990) ("We are not aware of a Louisiana statute or jurisprudence which imposes a duty" on a principal to provide an independent contractor "with adequate fall protection.").[43]

The facts of this case are similar to those in *Offord.*  The burden of unloading the lime in a safe manner was clearly on Johnson, and his signature on the "Job Description for Truck Drivers" evidences his acknowledgment of this responsibility.[44]   Accordingly, Plaintiffs have failed to present summary judgment evidence that material facts are in

---

[41] *Id.* at 542-43.
[42] *Id.* at 542.
[43] *Id.* at 543.
[44] Rec. Doc. No. 128-6.
28736

dispute on this issue, and Axiall is entitled to summary judgment on the Article 2315 negligence claim.

### C.  Custodial Liability under Louisiana Civil Code Article 2317.1

Plaintiffs also claim that Axiall is liable under Louisiana Civil Code Article 2317.1, which provides as follows:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.  Nothing in this Article shall preclude the court from the application of the doctrine of *res ipsa loquitur* in an appropriate case.[45]

Under this article, Plaintiffs ostensibly contend that Axiall is liable for allegedly unsafe conditions on its premises that allegedly caused or contributed to Johnson's injuries.[46] To prevail on a custodial liability claim, a plaintiff must demonstrate: "(1) the object was in the defendant's custody; (2) the thing contained a vice or defect which presented an unreasonable risk of harm to others; (3) the defective condition caused the damage; and (4) the defendant knew or should have known of the defect."[47]  Axiall moves for summary judgment on this claim.

The Court finds that Axiall is likewise entitled to summary judgment on this claim. Notably, Plaintiffs fail to identify any defect in the premises at the Axiall facility.   In

---

[45] Article 2317.1 modifies Article 2317 by removing strict liability and imposing liability on an owner or custodian of an object only if the object causes damage "occasioned by its ruin, vice, or defect, only upon showing that [the owner] knew of the ruin, vice, or defect ..., that the damage could have been prevented by the exercise of reasonable care, and [the owner] had failed to exercise such reasonable care." *Venezia v. ConocoPhillips Co.*, 2014 WL 107962 at *10 (E.D. La. Jan. 9, 2014)(citing La. Civ.Code art. 2317.1 (1996); *Reaux*, 840 So.2d at 24).

[46] The Court will disregard any arguments made in reliance on evidence that has been excluded pursuant to Rec. Doc. No. 158.

[47] *Cormier v. Dolgencorp, Inc.*, 136 Fed. Appx. 627, 627–28 (5th Cir. 2005) (citing La. C.C. arts. 2317 and 2317.1).

28736

opposition to Axiall's motion, Plaintiffs reference the "preliminary" HAAG Report of November 15, 2014, the June 16, 2015 *Affidavit* of Steven R. Smith, the May 29, 2015 *Affidavit* of Steven R. Smith, and the "final" HAAG Report dated February 27, 2015.  For the reasons set forth in the Court's September 11, 2015 *Ruling*,[48] the Smith *Affidavits* and the February 27 HAAG report were excluded; therefore, any reliance on those documents is unavailing.

Plaintiffs claim that Johnson was allowed to enter the Axiall plant without proper safety documentation and that "Axiall should have known of the dangers posed by offloading the lime without proper permits, allowing entrance with an incomplete Safe Work Permit, and failing to institute a monitoring procedure for time spent within the facility, … ."[49]  Plaintiffs also argue, for the first time, that the doctrine of *res ipsa loquitur* applies in this case; however, Plaintiffs utterly fail to satisfy or even argue the elements of that burden in this case.  As this Court has previously noted:

> *Res ipsa loquitur* only applies "where direct evidence of defendant's negligence is not available to assist the plaintiff to present a prima facie case of negligence."[50]  "In order to apply *res ipsa loquitur* three criteria must first be satisfied: (1) the injury is of the kind which does not ordinarily occur in the absence of negligence on someone's part; (2) the evidence sufficiently eliminates other more probable causes of the injury, such as the conduct of the plaintiff or of a third person; and (3) the alleged negligence of the defendant must be within the scope of the defendant's duty to the plaintiff."[51]  Furthermore, the Louisiana Supreme Court has held that "use of the doctrine of *res ipsa loquitur* in a negligence case, as in any case involving circumstantial negligence, does not relieve the plaintiff of the ultimate burden of proving by a preponderance of the

---

[48] Rec. Doc. No. 158.
[49] Rec. Doc. No. 139, p. 4.
[50] *Fernandez v. TAMKO Bldg. Products, Inc.*, 2 F.Supp.3d 854, 869 (M.D. La. 2014)(quoting *Shuff v. Brookshire Grocery Company*, 45,109 (La.App. 2 Cir. 3/3/10), 32 So.3d 1030, citing *Linnear v. CenterPoint Energy Entex/Reliant Energy,* 06–3030 (La.9/5/07), 966 So.2d 36.).
[51] *Id.* at 869-870 (quoting *Shuff*, 32 So.2d at 1030 (citing *Linnear*, 966 So.2d at 36)).
28736

evidence all of the elements necessary for recovery."[52]

Plaintiffs cannot simply invoke the doctrine of *res ipsa loquitur* and argue that such an assertion, without any legal discussion or evidentiary support, precludes summary judgment.

Plaintiffs have failed to allege a specific defect at the Axiall facility which would give rise to premises liability under Louisiana law.  There are no genuine issues of material fact which preclude summary judgment in favor of Axiall on this issue.  There is no evidence showing that any failure to ensure the completeness of Johnson's Safe Work Permit is a premises defect or the cause of Johnson's injuries.

## III.   CONCLUSION

For the reasons set forth above, Axiall's *Motion for Summary Judgment*[53] is GRANTED.  Plaintiff's claims against Axiall are dismissed with prejudice.  *Judgment* shall be entered at the close of this case.[54]

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>September 24, 2015</u>.


_____

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[52] *Id.* at 870 (quoting *Cangelosi v. Our Lady of the Lake Regional Medical Center,* 564 So.2d 654, 666 (La.1989)).
[53] Rec. Doc. No. 128.
[54] A Rule 54(b) Judgment is not appropriate under the facts of this case; any such motion shall be denied.
28736