UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

VINCENT JOHNSON, ET AL.                                        CIVIL ACTION NO.

VERSUS                                                                    14-CV-102-SDD-SCR

TRANSWOOD, INC., ET AL.

### RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by Defendant Muncie Power Products, Inc. ("Muncie"). Plaintiffs Tremechia Butler, Raven Johnson, and Vilencia Johnson ("Plaintiffs") have filed an *Opposition*[2] to which Muncie filed a *Reply*.[3] Plaintiffs have filed a cross *Motion for Partial Summary Judgment*[4] against Muncie, to which Muncie has filed an *Opposition*,[5] and Plaintiffs filed a *Reply*.[6] For the following reasons, the Court finds that Muncie's motion should be granted, and Plaintiffs' motion should be denied.

### I.   FACTUAL BACKGROUND

On January 18, 2013, Vincent Johnson ("Johnson") was unloading powdered lime from his truck at Axiall's chemical manufacturing facility in Plaquemine, Louisiana. On this date, Johnson became seriously injured after becoming entangled with the offloading system equipment on the tractor truck he owned. There were no witnesses

---

[1] Rec. Doc. No. 116.
[2] Rec. Doc. No. 119.
[3] Rec. Doc. No. 150.
[4] Rec. Doc. No. 132.
[5] Rec. Doc. No. 137.
[6] Rec. Doc. No. 142.
28762

to this accident. Johnson ultimately died from his injuries on March 26, 2014, after this lawsuit had been filed.[7]

Plaintiffs filed suit against several defendants but specifically allege that Muncie is liable to Plaintiffs under the Louisiana Products Liability Act (LPLA).[8] The unloading of the lime from Johnson's truck required utilization of the power takeoff and the rotary positive displacement truck blower with other component parts such as the shaft and shaft subparts which are component parts of the blower system. This blower system included a Power Take Off ("PTO") which was manufactured by Muncie. Plaintiffs contend that the Muncie PTO as installed into the Transwood[9] PTO system was unguarded, making the exposure to the rotating equipment possible, and thus rendering the PTO unreasonably dangerous in design. Plaintiffs also contend that several types of guards were available that would specifically prevent entanglements with PTO output shafts; thus, there existed an alternative design for the product that was capable of preventing the claimant's damage. Finally, Plaintiffs claim that Muncie failed to provide adequate warnings associated with the PTO.

Muncie moves for summary judgment arguing that much of Plaintiffs' offered expert testimony should be excluded because it was submitted beyond the discovery deadline. Even if the expert testimony is allowed, Muncie contends Plaintiffs lack sufficient evidence to establish that the PTO was unreasonably dangerous due to defective design or inadequate warning.

The Court recently ruled in this matter on three motions by various Defendants in

---

[7] Rec. Doc. No. 37.
[8] La. R.S. 9:2800.51, *et seq.*
[9] Transwood, Inc. has also been sued by Plaintiffs under the LPLA.

28762

this case objecting to expert evidence submitted by Plaintiffs well beyond the discovery deadlines.  For the reasons set forth in the Court's September 11, 2015 *Ruling*,[10] the June 16, 2015 *Affidavit* of Steven R. Smith, the May 29, 2015 *Affidavit* of Steven R. Smith, and the "final" HAAG Report dated February 27, 2015 by David L. Teasdale, were excluded; therefore, any reliance by Plaintiffs on those documents in arguing this motion is unavailing.

## II.   LAW AND ANLYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[12]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[13]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[14]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory

---

[10] Rec. Doc. No. 158.
[11] Fed. R. Civ. P. 56(a).
[12] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[13] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[14] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
28762

allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[15]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[16] All reasonable factual inferences are drawn in favor of the nonmoving party.[17] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[18] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[19]

### B. The Louisiana Products Liability Act (LPLA)

Because subject matter jurisdiction in this case is based on diversity of citizenship, the substantive law of Louisiana governs this dispute.[20] The LPLA establishes the exclusive theory of liability for manufacturers regarding damages caused by their products. The applicable standard under the LPLA is as follows: "The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the

---

[15] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[16] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[17] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[18] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[19] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[20] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

28762

claimant or another person or entity."[21]  Thus, to maintain a successful claim under the LPLA, a claimant must establish four elements:  (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous;" and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.[22]

A product is "unreasonably dangerous" under the LPLA in one of four ways: (1) construction or composition; (2) design; (3) inadequate warning; or (4) failure to conform to an express warranty.[23]  The "unreasonably dangerous" characteristic must exist at the time the product left the manufacturer's control or result from a reasonably anticipated modification or alteration of the product.[24]  Louisiana law does not permit a factfinder "to presume an unreasonably dangerous condition solely from the fact that injury occurred."[25]  Rather, the claimant has the burden of proving the required elements under the LPLA.[26]  Plaintiffs contend that the Muncie PTO was both unreasonably dangerous in design and due to inadequate warning.

    1. Manufacturer

The LPLA defines "manufacturer" as follows:

> (1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce.

---

[21] La. R.S. 9:2800.54(A).
[22] *Ayo v. Triplex, Inc.*, 457 F. App'x 382, 385-86 (5th Cir. 2012)(citing *Jack v. Alberto–Culver USA, Inc.*, 949 So.2d 1256, 1258 (La. 2007) (citing La. R.S. 9:2800.54(A)).
[23] La. R.S. § 9:2800.54(B).
[24] *Id.* § 2800.54(C).
[25] *Woodling v. Hubbell Inc.,* 35 F. App'x 386, *4 (5th Cir. 2002)(citing *Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000) (quoting *McCarthy v. Danek Med., Inc.*, 65 F.Supp.2d 410, 412 (E.D.La.1999)).
[26] La. R.S. 9:2800.54(D).

28762

> "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:
>
>> (a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.
>>
>> (b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.
>>
>> (c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.[27]

Louisiana Revised Statute 9:2800.53(3) defines a "product" as "a corporeal movable that is manufactured for placement into trade or commerce, including a product that forms a component part of or that is subsequently incorporated into another product or an immovable." The LPLA does not define "placement into trade or commerce."

Plaintiffs claim that the PTO shaft is the unreasonably dangerous component which caused Johnson's injuries. Muncie has argued and presented evidence that it is not the manufacturer of the PTO shaft, only the PTO. Plaintiffs' own "preliminary" expert report by HAAG Engineering, dated November 15, 2014, confirms this: "The records provided by Transwood show that the PTO shaft was installed on April 20, 2010, however, **the manufacturer of the shaft is not identified**."[28] The HAAG expert report also noted that, "Transwood did not design the installed equipment; they only purchased independent components that were then assembled to create a working system."[29]

"A manufacturer cannot be liable in a product liability claim where it shows that it

---

[27] La. R.S. 9:2800.52.
[28] Rec. Doc. No. 129-2, p. 10 (page 9 of report)(emphasis added).
[29] Id.
28762

did not manufacture or install the component of the product alleged to be defective."[30] Accordingly, Muncie contends it cannot be held liable under the LPLA. Plaintiffs argue that "Johnson's clothing became entangled into the spinning unguarded shaft and component parts which were connected to the power takeoff unit. … ."[31] Plaintiffs further claim that the Muncie PTO unit was unreasonably dangerous in design because there was no protective guard on the exposed PTO shaft.[32] As such, Muncie contends that Plaintiffs unreasonably demand that Muncie should have provided a protective guard for a product that it did not manufacture. Muncie maintains it had no duty to design or recommend a protective device for a product it did not manufacture or install on this vehicle.

> Plaintiffs counter that:
>
> Johnson's injuries were the direct result of entanglement with the PTO shaft, rotating at a high speed, which was powered and driven by this PTO. Without the involvement of this PTO, which supplied the power to rotate the shaft, the shaft itself would have been stationery and could not have caused Mr. Johnson's injuries. The characteristic which was the proximate cause of Mr. Johnson's injury was the power rating and the attendant potential of the PTO to cause high-speed rotation of a shaft, which Muncie anticipated would be connected to this PTO, without requiring the use of a protective guard.[33]

However, in their own summary judgment motion, Plaintiffs make the incongruous argument that Muncie "was responsible for designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling PTO

---

[30] *Jackson v. FIE Corp.*, 161 F.3d 8, *2 (5th Cir. 1998)(citing *Newman v. General Motors Corp.*, 524 So.2d 207, 209 (La.App. 4th Cir.1988); *see also,  Home Insurance Co.v. National Tea Co.*, 577 So.2d 65 (La.App. 1st Cir.1990); *Duhon v. Petroleum Helicopters, Inc.*, 554 So.2d 1270 (La.App. 3d Cir.1989)).
[31] Rec. Doc. No. 119, p. 2.
[32] *Id.* at p. 7.
[33] *Id.* at p. 5.
28762

shaft."[34]  This statement is unsupported by Plaintiffs' own record evidence and their argument in opposition to Muncie's summary judgment motion which acknowledges that Muncie manufactured the PTO unit, not the PTO shaft.  Plaintiffs' arguments in this brief repeatedly refer to Muncie's liability vis-à-vis the "PTO system" which it did not manufacture.  The evidence demonstrates that the PTO unit is a distinct, separate, component part of the PTO shaft system.

Additionally, the bulk of expert evidence upon which Plaintiffs rely has been excluded by the Court.  The references in the *Affidavit* of expert Stephen Killingsworth[35] cited and relied upon by Plaintiffs refer to the "overall design of the PTO auxiliary shaft system."[36]  Indeed, every citation by Plaintiffs to Killingsworth's findings references the PTO shaft system and not the PTO unit itself.  Killingsworth specifically found that "the installer of the PTO auxiliary shaft system failed to guard the shaft of the PTO shaft system."[37]  Killingsworth later opines:  "the installer is responsible for the safety of the PTO auxiliary shaft system."[38]  All references in the Killingsworth report reference the "installer" and the "PTO auxiliary shaft system."  There is not a single reference to the PTO unit itself or the manufacturer thereof as being the proximate cause of Johnson's injuries.  Plaintiffs' HAAG expert noted that the manufacturer of the PTO shaft is not identified, and it is acknowledged by Plaintiffs that Muncie did not install the PTO unit.[39]

---

[34] Rec. Doc. No. 132-1, p. 6.
[35] Rec. Doc. No. 132-4, p. 10.  Muncie argues that the report of Killingsworth should be excluded because it was untimely submitted.  A cursory review suggests that the Killingsworth report was submitted untimely and should be excluded; however, this report was not the subject of the motions addressed in the Court's September 11 *Ruling*, and the Court will consider the report for the purposes of this motion as it does not change the Court's ultimate holding.
[36] Rec. Doc. No. 132-1, pp. 7-8.
[37] *Id.*
[38] *Id.*
[39] Rec.Doc. No. 119, p. 7.

28762

Plaintiffs cannot carry their burden of establishing that Muncie is the manufacturer of the allegedly defective product, *i.e.*, the PTO shaft system.  Likewise, Plaintiffs have offered no summary judgment evidence that the PTO unit itself was unreasonably dangerous in design.  Thus, the Court finds that Plaintiffs have failed to establish that Muncie is the manufacturer of the allegedly defective product (the PTO shaft system); therefore, Muncie has no liability under the LPLA.

### 2. Unreasonably Dangerous in Design

Plaintiffs have likewise failed to establish that the product Muncie actually *did* manufacture – the PTO unit – is unreasonably dangerous in design.   Under Section 9:2800.56 of the LPLA, a product is unreasonably dangerous in its design if, when the product left the manufacturer's control:  (1) there existed an alternative design for the product that was capable of preventing the claimant's damage; and (2) the likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.

This test requires a plaintiff to prove both "that an alternative design existed" at the time the product was manufactured and "that the risk avoided by using the alternative design (magnitude of damage discounted by the likelihood of its occurrence) would have exceeded the burden of switching to the alternative design (added construction costs and loss of product utility)."[40]

As noted above, Muncie refers to the Killingsworth report wherein Plaintiffs'

---

[40] *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 700-01 (5th Cir. 2012) (citing *Lawrence v. Gen. Motors Corp.*, 73 F.3d 587, 590 (5th Cir. 1996)).

expert acknowledges that: (1) the rotating shaft is a separate component part from the PTO; (2) Muncie did not manufacture or install the shaft; and (3) the shaft being left unguarded and unobstructed beneath the truck is the fault of the installer.[41]  Muncie argues that Killingsworth does not specify any aspect of the design of the PTO that contributed to or caused Johnson's injuries.  Muncie further contends Plaintiffs' design claim fails because, although their experts identified the existence of inexpensive and available guards, no expert provided any examples or information regarding these guards.  No expert references the availability of the guards at the time Muncie manufactured its PTO or the time the PTO left Muncie's control.  Moreover, Muncie rejects the assertion that it has a legal duty under the law to manufacture an entirely separate component part to act as a safety mechanism for a third separate component part (the shaft) that Muncie does not build.  Plaintiffs do not offer any alternative or change to the Muncie PTO itself; rather, their claim is that another product should have had a protective device.  Muncie contends Plaintiffs have failed to meet their burden and summary judgment should be granted in its favor.

It is Plaintiffs' position that the Killingsworth report references available protective guards that would render Muncie's product less dangerous. However, as noted previously, the Killingsworth report refers only to the PTO shaft system, not the PTO unit itself.  Plaintiffs also contend that a product is unreasonably dangerous when evidence shows that the product cannot be safely used by following the instructions in the operating manual.  Plaintiffs cite Muncie's operating manual, which reads: "It shall be the responsibility of the installer of a Muncie Power Take-Off to decide whether to

---

[41] Rec. Doc. No. 132-4.

28762

install guards in the PTO and/or drive-line area because of potential exposure to danger."[42]  Plaintiffs aver that Muncie's PTO cannot be safely used by following these instructions: "While Muncie is not an installer, the design of its PTO must meet the standard of being able to be safely used.  This is not possible without a guard."[43]  Plaintiffs contend that the failure of Muncie to provide adequate instructions that a safety guard must be used in conjunction with its PTO renders the product unreasonably dangerous in design.  The arguments that Plaintiffs present with respect to design are more appropriately applied to a failure to warn claim.  Plaintiffs claim that Killingsworth opined that safety is a design issue and not an installation issue; thus, Muncie's design process was deficient and resulted in an unreasonably dangerous PTO.  Plaintiffs state: "Muncie's failure to maximize safety consideration in its operating manual, not its failure to manufacture shafts or shaft guards, resulted in an ultrahazardous product."  Again, the Court finds argument more applicable to a failure to warn claim.

Plaintiffs cite *Tassin v. Sears, Roebuck and Co.*;[44] however, the Court fails to see how *Tassin* supports Plaintiffs' position.  Killingsworth was also the plaintiff's expert in *Tassin*, and he gave several expert opinions regarding the allegedly defective design of a table saw.  An alternative design Killingsworth identified was a hold-down clamp for the miter gauge on the saw.[45]  The miter gauge on the saw at issue was not standardly equipped with a hold-down clamp; rather, the hold-down clamp was sold as an optional

---

[42] Rec. Doc. No. 142, p. 2.  Plaintiffs cite this portion of Muncie's operating manual but fail to provide the Court reference to an Exhibit.
[43] *Id.*
[44] 946 F. Supp. 1241 (M.D. La. 1996).
[45] *Id.* at 1249.

28762

accessory.[46] Killingsworth believed that the hold-down clamp would have helped stabilize the workpiece. He averred that Sears should have packaged the miter gauge accessory with the hold-down clamp as standard equipment.[47]

The *Tassin* court noted the materials reviewed and relied upon by Killingsworth in reaching his conclusions and called his testimony regarding proposed alternative designs "somewhat of a moving target."[48] The court noted that, despite more than eighteen months of investigation, Killingsworth had never tested or reviewed any testing of the miter gauge hold-down clamp.[49] He did not have dimensions or specifications on the clamp and had never examined the impact of the miter gauge clamp on the overall utility of the saw. He did not do any engineering computations to verify his proposed alternative design.[50] Thus, the court granted the motion to exclude Killingsworth's opinion on the miter gauge hold-down clamp as an alternative for the table saw. The court stated:

> Mr. Killingsworth's methodology for determining that the miter gauge hold-down clamp is an alternative design is virtually nonexistent, which makes his opinion unreliable. He did not physically see the clamp, test the clamp, review the test of others, and the literature he relies on does not specifically endorse a miter gauge hold-down clamp as an alternative design.[51]

The court also found "Mr. Killingsworth's opinion that anything that contributes to the stability of the workpiece could be an alternative design … is too general to be of any

---

[46] *Id.*
[47] *Id.*
[48] *Id.* at 1248-49.
[49] *Id.* at 1250.
[50] *Id.*
[51] *Id.* Killingsworth presented other proposed alternative designs. The court excluded his opinions on all alternative designs except the "Shophelper" device because Killingsworth had actually tested the Shophelper on the types of cuts that the saw was designed to perform, and the defendants did not seriously contest his findings with respect to this product. *Id.* at 1251.
28762

relevance to the issues before the jury[.]"[52]

The Court finds that the *Tassin* analysis applies to the instant case as well. A review of Killingsworth's report in this matter shows no testing of any proposed guards and makes no reference to any specific model or brand of guards or their availability or affordability. In fact, as stated previously, Killingsworth places all of the liability and responsibility to provide a guard on the "installer," who no one disputes was not Muncie. There is no evidence that the PTO unit materially deviated from the specifications or performance standards for such a product.

The Court finds no summary judgment evidence to support the claim that the Muncie PTO was defective in its design. The Court also finds that Plaintiffs' reliance on Killingsworth's opinions is misplaced, and, in several instances, Plaintiffs' claims go beyond the scope of Killingsworth's findings. Plaintiffs have presented no evidence in this case that the PTO unit itself was defectively designed. The supposed alternative designs offered by Plaintiffs are not alterations or changes to Muncie's manufactured product. Moreover, Plaintiffs fail to satisfy their second burden on this claim - to provide a meaningful risk/utility analysis regarding their proffered alternative designs. As Plaintiffs have failed to carry their burden on the design claim, summary judgment in favor of Muncie on this claim is granted.

### 3. Failure to Warn

Plaintiffs also claim that Muncie is liable for failing to adequately warn of the danger associated with its PTO unit. To maintain a failure to warn claim under the LPLA, "a plaintiff must demonstrate that the product in question has a potentially

---

[52] *Id.* at 1252.
28762

damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic."[53]  The manufacturer is liable for an inadequate warning only if the defect proximately caused the plaintiff's injury.[54]  The plaintiff bears the burden of proving that "but for" the inadequate warning, the accident in question would not have occurred.[55]

Muncie moves for summary judgment on this claim noting that Plaintiffs' experts acknowledge that the Muncie PTO Installation and Owner's Manual references a packet containing four warning labels.[56]  Muncie contends that Plaintiffs' expert report does not conclude that Muncie's provided warnings were inadequate in any way; rather, the report notes that the warnings were provided by Muncie but not affixed when the PTO unit was installed onto Johnson's truck.[57]  Muncie provided warnings both in its user manual and in the form of decals provided with the PTO upon sale.

Muncie also argues that, even though it did provide adequate warnings, it did not have a legal duty to provide a warning in this case because co-Defendant Transwood is a sophisticated purchaser and user of the product.  Muncie cites this Court's recent opinion in *Fernandez v. Tamko Building Products, Inc.*, where the Court held that manufacturers have no duty to warn an end-user of a product's dangers when the product is initially purchased by a sophisticated user who then has the duty to warn the end-user.[58]  Muncie also cites Louisiana jurisprudence for the position that a product is

---

[53] *Stahl v. Novartis Pharmaceuticals Corp.,* 283 F.3d 254, 264 (5th Cir. 2002).
[54] La. R.S. 9:2800.54(A); *see also, Wheat v. Pfizer*, 31 F.3d 340, 342 (5th Cir. 1994).
[55] *See Brown v. Parker–Hannifin Corp.*, 919 F.2d 308, 311 (5th Cir. 1990).
[56] Rec. Doc. No. 116-2, p. 9.  Muncie cites to the February 27, 2015 HAAG report (Rec. Doc. No. 116-3, p. 23) which the Court has excluded as untimely.
[57] *Id.*
[58] 2 F.Supp.3d 854, 864 (M.D. La. 2014).
28762

not unreasonably dangerous where it can be safely used by following the instructions in the manual.[59] Here, Muncie contends the user manual provided with the PTO states in large block letters on the first page following the table of contents: "NEVER GET UNDER THIS TRUCK IF THE ENGINE IS RUNNING!"[60] While there are no witnesses who observed how Johnson came to be underneath his truck, Muncie contends that, operating under the assumption that Johnson voluntarily crawled under truck, he would not have been injured had he followed Muncie's warning.

Muncie also contends Plaintiffs cannot prove that its product was the proximate cause of Johnson's injuries because Plaintiffs have alleged that the PTO shaft was the cause of the injuries. Muncie did not assemble the PTO system or install it underneath Johnson's truck.

Failing again to see the distinction between the PTO unit and the PTO shaft system, Plaintiffs argue that Muncie knew of the dangers that ordinary users face when using a PTO system, and that Muncie neglected to provide Johnson with any warning expected to catch the attention of a reasonably prudent person under similar circumstances who may have purchased the PTO system on his truck.[61] Plaintiffs further claim that Muncie failed to provide Johnson with adequate warnings to accurately advise him of the increased propensity for injury when operating the PTO shaft system.[62]

Plaintiffs further contend that Muncie gives the purchaser of the PTO unit specific options for shafts that may be used with the PTO, but provides no specific instructions

---

[59] Muncie cites *Seither v. Winnebago Industries, Inc.*, 853 So.2d 37, 42 (La. App. 4 Cir. 7/2/03).
[60] Rec. Doc. No. 132-11, p. 4.
[61] Rec. Doc. No. 132-1, p. 8.
[62] *Id.* at p. 9.
28762

regarding the use or installation of protective guards. Plaintiffs argue that Muncie's installation instructions show that Muncie is aware of the potential danger in using its product; however, Muncie's failure to provide specific instructions requiring the use of a protective guard in conjunction with its PTO and a PTO shaft makes its product unreasonably dangerous. Plaintiffs maintain that a direct recommendation to use a protective guard for a product that exposes its users to danger should have been included with Muncie's other warnings:[63] "It is unreasonable to warn of the hazards of a product and provide no assurance that these hazards could be avoided by the use of a specific protective measure, in this case, a protective guard for an exposed PTO shaft."[64]

The Court finds that Plaintiffs have likewise failed to carry their burden on the failure to warn claim. The evidence in this case is replete with examples of the warnings provided by Muncie with respect to its PTO unit. In addition to the one cited above, the Muncie manual contained the following warnings under a page entitled "WARNING" in bold block letters:

> STAY CLEAR OF SPINNING DRIVE SHAFTS TO AVOID BECOMING ENTANGLED AND INJURED.
>
> IT SHALL BE THE RESPONSIBILITY OF THE INSTALLER OF A MUNCIE POWER TAKE-OFF TO DECIDE WHETHER TO INSTALL GUARDS IN THE PTO AND/OR DRIVE-LINE AREA BECAUSE OF POTENTIAL EXPOSURE TO DANGER.
>
> THIS IS BECAUSE MOST MUNCIE PTOS ARE INSTALLED BY EQUIPMENT DISTRIBUTORS OR MANUFACTURERS AND THEREFORE, THE RESPONSIBILITY OF THE INSTALLATION IS

---

[63] Rec. Doc. No. 119, p. 7.
[64] *Id.*

BEYOND THE CONTROL OF MUNCIE POWER PRODUCTS.[65]

Muncie also provided warning stickers with its product to be placed on the truck body "in a position easily visible by anyone who might go under the vehicle or near the PTO."[66]  The warning "NEVER GET UNDER THIS TRUCK IF THE ENGINE IS RUNNING!" is accompanied by a picture of someone becoming entangled in the shaft, and states "You may be hurt or killed."[67]  The Court finds that Muncie's warnings sufficiently placed the purchasers of its product on notice of the potential dangers of the use of the PTO as incorporated into a PTO system.

Furthermore, the Court agrees with Muncie's contention that it had no duty to warn Johnson under the sophisticated user doctrine.  It is undisputed that Johnson did not purchase the PTO unit from Muncie; rather, co-Defendant Transwood purchased the PTO unit and incorporated it into the PTO system.  As this Court noted in *Fernandez*:

> A manufacturer has a lessened duty to warn of danger when the danger is obvious. This duty is further lessened when the user is sophisticated.[68] Under Louisiana law, a manufacturer has no duty to warn a sophisticated user.[69]  The LPLA provides that: "A manufacturer is not required to provide an adequate warning about his product when ... [t]he user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic."[70]  "Similarly, a manufacturer has no duty to warn a

---

[65] Rec. Doc. No. 119-4, p. 3.
[66] *Id.* at p. 5.
[67] *Id.*
[68] *Fernandez*, 2 F.Supp.3d at 863 (citing *Savant v. Beretta USA Corp.*, No. 05–1501, 2007 WL 1068481 (W.D.La.4/4/07) (citing *Johnston v. Hartford,* 623 So.2d 35, 37 (La.App. 1st Cir.1993); *Ducote v. Liberty Mutual Ins. Co.*, 451 So.2d 1211, 1213 (La.App. 4th Cir.1984); *Duncan v. Louisiana Power & Light Co.,* 532 So.2d 968, 972 (La.App. 5th Cir.1988)).
[69] *Id.* (citing *Davis v. Avondale Industries, Inc.,* 975 F.2d 169, 172 (5th Cir.1992)).
[70] *Id.* at 863-64 (quoting *Davis*, 975 F. 2d at 172 (quoting La. R.S. § 2800.57(B)(2)); *see also  Duncan v. Louisiana Power & Light Co.*, 532 So.2d 968, 972 (La.App. 5th Cir.1988) ("There is no duty to warn a sophisticated user of dangers of which he may be presumed to know through his familiarity with the product."); *Gautreaux v. Tex–Steam Co.*, 723 F.Supp. 1181, 1182 (E.D.La.1989)).
28762

sophisticated *purchaser*.[71]  "'Louisiana does not hold [that] a manufacturer is compelled to warn sophisticated purchasers of dangers of which the buyer either knows or should be aware.'"[72]  Furthermore, "manufacturers have no duty to warn an end-user of a product's dangers when the product is initially purchased by a sophisticated user that would have the duty to warn the end-user."[73]

As the purchaser of the PTO unit who incorporated it into the PTO shaft system, the Court finds that Transwood is a sophisticated purchaser for whom no duty to warn existed.  And although Muncie actually did provide sufficient warnings to Transwood, as a sophisticated purchaser, the duty to warn end-users like Johnson became Transwood's.[74]  There are no genuine, material fact issues in this case, and summary judgment is proper in favor of Muncie on this claim.

---

[71] *Id.* at 864 (quoting *Davis*, 975 F. 2d at 172)(emphasis in original).
[72] *Id.* (quoting *Davis*, 975 F. 2d at 172 (quoting *Bradco Oil & Gas Co. v. Youngstown Sheet & Tube Co.*, 532 F.2d 501, 504 (5th Cir.1976) *cert. denied,* 429 U.S. 1095 (1977)).
[73] *Id.* (quoting *Guillot v. Aventis Pasteur, Inc.*, No. 02–3373, 2013 WL 4508003, at *17 (E.D.La.8/22/13) (citing *Longo v. E.I. Dupont De Nemours & Co.*, 632 So.2d 1193 (La.Ct.App.1994); *Scallan v. Duriron Co., Inc.*, 11 F.3d 1249 (5th Cir.1994); *Washington v. Dep't of Transp.*, 8 F.3d 296 (5th Cir.1993); *Davis v. Avondale Indus., Inc.*, 975 F.2d 169 (5th Cir.1992); *Bates v. E.D. Bullard Co.*, 76 So.3d 111 (La.Ct.App.2011))).
[74] The Court also notes that, as an experienced contract truck driver who regularly used this equipment to earn his living, it could be found that Johnson himself was a sophisticated user who should have known of this obvious danger.  Nevertheless, because the Court finds the warnings given by Muncie are more than adequate, the Court need not address this issue.

28762

### III. CONCLUSION

For the reasons set forth above, Muncie's *Motion for Summary Judgment*[75] is GRANTED. Plaintiffs' *Motion for Partial Summary Judgment* [76] is DENIED. Plaintiffs' claims against Muncie are dismissed with prejudice. *Judgment* shall be entered at the close of this case.[77]

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>September 25, 2015</u>.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[75] Rec. Doc. No. 116.
[76] Rec. Doc. No. 132.
[77] A Rule 54(b) Judgment is not appropriate under the facts of this case; any such motion shall be denied.
28762