UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

VINCENT JOHNSON, ET AL.                                CIVIL ACTION

VERSUS                                                 14-102-SDD-EWD

TRANSWOOD, INC., ET AL.

### RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by Defendants TransWood, Inc. and TransWood Logistics, Inc. (collectively "TransWood"). Plaintiffs, Tremechia Butler, Raven Johnson, and Vilencia Johnson ("Plaintiffs"), have filed an *Opposition*[2] to which TransWood filed a *Reply*.[3] Plaintiffs have filed a cross *Motion for Partial Summary Judgment*[4] against TransWood, to which TransWood has filed an *Opposition*,[5] and Plaintiffs filed a *Reply*.[6] For the following reasons, the Court finds that both motions should be denied.

### I.    FACTUAL BACKGROUND

In April of 2010, TransWood's affiliated company, Leasco, Inc., acquired a 2005 International 9400I truck.[7] That same month, Transwood installed on this truck a power take off ("PTO") manufactured by co-Defendant Muncie and a blower manufactured by co-Defendant Tuthill.[8] TransWood contends that, in keeping with its routine procedures,

---

[1] Rec. Doc. No. 127.
[2] Rec. Doc. No. 135.
[3] Rec. Doc. No. 144.
[4] Rec. Doc. No. 131.
[5] Rec. Doc. No. 138.
[6] Rec. Doc. No. 141.
[7] Rec. Doc. No. 127-3, *Affidavit* of Mark Penry.
[8] Rec. Doc. No. 127-4, *Affidavit* of Chad Beck.

29479

it applied warning labels in accordance with the manufacturers' recommendations.[9]

On June 1, 2012, TransWood and Vincent Johnson ("Johnson") entered into an Independent Contractor Agreement ("ICA") for a "For-Hire Motor Carrier" for the business of transporting freight in accordance with federal regulations.[10] TransWood contends that it contracted with Johnson, in part, because he had experience driving this type of truck and "knew what he was doing."[11] Also on June 1, 2012, Johnson entered into an Equipment Rental Agreement with an option to purchase the truck.[12] TransWood contends that, both the ICA and the Equipment Rental Agreement provide that, Johnson accept the truck "as is" and obligate Johnson to maintain the truck at his own cost and expense.[13] On December 1, 2012, Johnson purchased the truck from Leasco by paying off his note, and he terminated his contract with TransWood.[14] Johnson subsequently entered into an independent contractor agreement with Material Delivery Service, Inc. ("MDS").

On January 18, 2013, Vincent Johnson ("Johnson") was unloading powdered lime from his truck at Axiall's chemical manufacturing facility in Plaquemine, Louisiana. On this date, Johnson became seriously injured after becoming entangled with the offloading system equipment on the tractor truck he owned. There were no witnesses to this accident. Johnson ultimately died from his injuries on March 26, 2014, after this lawsuit had been filed.[15] Lionel Collins, senior production technician at the Axiall facility, testified

---

[9] *Id.*
[10] Rec. Doc. No. 127-3, *Affidavit* of Mark Penry.
[11] Rec. Doc. No. 127-1, p. 2, citing Rec. Doc. No. 127-6, *Affidavit* of Stephen Hooge, ¶3.
[12] Rec. Doc. No. 127-3, *Affidavit* of Mark Penry.
[13] *Id.*
[14] *Id.*
[15] Rec. Doc. No. 37.

29479

that he had interacted with Johnson on this date and assured himself that Johnson knew how to unload the powdered lime from his truck.[16] Collins also testified that he observed Johnson "way up in there" under the truck, and Johnson's right arm, torso, and face were on top of the PTO drive shaft.[17]

Plaintiffs filed suit against several Defendants but specifically allege that TransWood is liable to Plaintiffs under the Louisiana Products Liability Act (LPLA).[18] The unloading of the lime from Johnson's truck required utilization of the power takeoff and the rotary positive displacement truck blower with other component parts such as the shaft and shaft subparts which are component parts of the blower system. Plaintiffs contend that TransWood is a manufacturer under the LPLA because it incorporated into the truck component parts manufactured by other manufacturers to compose the PTO system. Plaintiffs contend that TransWood's PTO assembly is an unreasonably dangerous product because there existed safer alternative designs for the product, and because TransWood failed to provide any warnings to Johnson of the potential dangers associated with the product.

TransWood moves for summary judgment arguing that much of Plaintiffs' offered expert testimony should be excluded because it was submitted beyond the discovery deadline. Even if the expert testimony is allowed, TransWood contends Plaintiffs lack sufficient evidence to establish any of their theories under the LPLA.

The Court has ruled in this matter on three motions by various Defendants in this case objecting to expert evidence submitted by Plaintiffs well beyond the discovery

---

[16] Rec. Doc. No. 127-7, Deposition of Lionel Collins, pp. 100-101; 123.
[17] *Id.* at p. 94.
[18] La. R.S. 9:2800.51, *et seq.*
29479

deadlines.  For the reasons set forth in the Court's September 11, 2015 *Ruling*,[19]  the June 16, 2015 *Affidavit* of Steven R. Smith, the May 29, 2015 *Affidavit* of Steven R. Smith, and the "final" HAAG Report dated February 27, 2015 by David L. Teasdale, have been excluded; therefore, any reliance by Plaintiffs on those documents in arguing this motion is unavailing.

## II.   LAW AND ANLYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[21]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[22]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[23]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a

---

[19] Rec. Doc. No. 158.
[20] Fed. R. Civ. P. 56(a).
[21] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[22] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[23] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
29479

scintilla of evidence."[24]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[25] All reasonable factual inferences are drawn in favor of the nonmoving party.[26] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[27] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[28]

### B. The Louisiana Products Liability Act (LPLA)

Because subject matter jurisdiction in this case is based on diversity of citizenship, the substantive law of Louisiana governs this dispute.[29] The LPLA establishes the exclusive theory of liability for manufacturers regarding damages caused by their products. The applicable standard under the LPLA is as follows: "The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or

---

[24] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[25] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[26] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[27] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[28] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).
[29] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).
29479

entity."[30] Thus, to maintain a successful claim under the LPLA, a claimant must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous"; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.[31]

A product is "unreasonably dangerous" under the LPLA in one of four ways: (1) construction or composition; (2) design; (3) inadequate warning; or (4) failure to conform to an express warranty.[32] The "unreasonably dangerous" characteristic must exist at the time the product left the manufacturer's control or result from a reasonably anticipated modification or alteration of the product.[33] Louisiana law does not permit a factfinder "to presume an unreasonably dangerous condition solely from the fact that injury occurred."[34] Rather, the claimant has the burden of proving the required elements under the LPLA.[35] Plaintiffs contend that the Muncie PTO was both unreasonably dangerous in design and due to inadequate warning.

1. Proximate Causation

To establish causation, Plaintiffs need not rule out every conceivable explanation for the incident, but they must present sufficient evidence to enable a jury to find that

---

[30] La. R.S. 9:2800.54(A).
[31] *Ayo v. Triplex, Inc.*, 457 F. App'x 382, 385-86 (5th Cir. 2012)(citing *Jack v. Alberto–Culver USA, Inc.*, 949 So.2d 1256, 1258 (La. 2007) (citing La. R.S. 9:2800.54(A)).
[32] La. R.S. § 9:2800.54(B).
[33] *Id.* § 2800.54(C).
[34] *Woodling v. Hubbell Inc.,* 35 F. App'x 386, *4 (5th Cir. 2002)(citing *Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000) (quoting *McCarthy v. Danek Med., Inc.*, 65 F.Supp.2d 410, 412 (E.D.La.1999)).
[35] La. R.S. 9:2800.54(D).
29479

either a defect in the product or TransWood's negligence was the most probable cause of the injuries Johnson sustained. If Plaintiffs fail to introduce sufficient evidence to enable a jury to find that either a defect in the product or TransWood's negligence most probably caused the accident, then the trial court should enter summary judgment in favor of the TransWood.[36]

TransWood contends summary judgment is proper because Plaintiffs cannot establish that a defect attributable to TransWood was the proximate cause of Johnson's injuries. Citing to the HAAG report, TransWood notes that no one knows how or why Johnson became positioned within reach of the PTO shaft. Considering the six different theories offered in the *Petition* and the Haag Report, TransWood contends that Plaintiffs have presented nothing more than "gross speculation"[37] regarding why Johnson was found entangled in the PTO shaft.

For the reasons discussed at length below, the Court finds that it is a disputed issue of material fact whether the unguarded PTO shaft was the proximate cause of Johnson's injuries.

    2. Unreasonably Dangerous in Design

Under Section 9:2800.56 of the LPLA, a product is unreasonably dangerous in its design if, when the product left the manufacturer's control: (1) there existed an alternative design for the product that was capable of preventing the claimant's damage; and (2) the likelihood that the product's design would cause the claimant's damage and the gravity of

---

[36] *See Brown v. Parker-Hannifin Corp.*, 919 F.2d 308, 312 (5th Cir. 1990)(citing *Richardson v. Richardson–Merrell, Inc.*, 857 F.2d 823, 829 (D.C.Cir.1988), *cert. denied*, 493 U.S. 882, 110 S.Ct. 218, 107 L.Ed.2d 171 (1989).
[37] Rec. Doc. No. 127-1, p. 8.
29479

that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.

This test requires a plaintiff to prove both "that an alternative design existed" at the time the product was manufactured and "that the risk avoided by using the alternative design (magnitude of damage discounted by the likelihood of its occurrence) would have exceeded the burden of switching to the alternative design (added construction costs and loss of product utility)."[38]

In Plaintiff's *Motion for Summary Judgment*, Plaintiffs contend that TransWood is liable under the LPLA theory of unreasonably dangerous in design based on TransWood's allegedly negligent installation of the PTO shaft assembly. It is true that, under the LPLA, one is considered a manufacturer of a product if it "incorporates into the product a component or part manufactured by another manufacturer…".[39] Thus, TransWood is deemed the manufacturer of the PTO shaft assembly system because it incorporated that component part into its own product, the truck purchased by Johnson.

Plaintiffs contend the PTO shaft assembly as installed was unreasonably dangerous under the LPLA because there existed at the time of installation an alternative design capable of preventing the injuries ultimately suffered by Johnson.[40] Plaintiffs cite to the Killingsworth Affidavit and Expert Report[41] which states that "the installer of the

---

[38] *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 700-01 (5th Cir. 2012) (citing *Lawrence v. Gen. Motors Corp.*, 73 F.3d 587, 590 (5th Cir. 1996)).
[39] La. R.S. 9:2800.53(1)(c).
[40] To the extent Plaintiffs rely on the *Affidavit* and Report of Seven R. Smith, P.E., for the proposition that TransWood deviated from the Tuthill and Muncie manuals for installation, this evidence has been excluded for the reasons set forth in Rec. Doc. No. 158 and cannot be considered by the Court.
[41] Rec. Doc. No. 135-3. Plaintiffs also cite the *Affidavit* & Expert Report of Stephen Smith, but Smith has previously been excluded by this Court. Rec. Doc. No. 158.
29479

PTO auxiliary shaft system failed to guard the shaft of the PTO auxiliary shaft system," and that "[i]nexpensive guarding schemes were available to guard the shaft of PTO auxiliary shaft system from contact".[42]

TransWood contends that the PTO was installed in conformance with the installation instructions set forth in the PTO Installation and Owner's Manual[43] provided by co-Defendant Muncie.[44] However, Muncie's product literature indicates that it is the responsibility of the installer to decide whether and where to install guards in the PTO and/or driveline area because of the potential exposure to danger. Also, TransWood avers that it followed co-Defendant Tuthill's[45] Installation manual[46] for the PTO blower by installing the PTO in a position that it was adequately guarded behind the truck frame and battery box. TransWood claims that the PTO and shaft "were installed in an area that is difficult to access unintentionally and the space between the battery box and the blower of approximately six to eight inches is an insufficient distance for a person to squeeze through to access the PTO."[47] In short, Transwood would have this Court conclude that its installation decisions obviated the advisability and/or need for guards. This, the Court finds is a question for the trier of fact.

TransWood contends Plaintiffs have failed to carry their burden on this theory of recovery because neither Plaintiffs nor any of their experts have identified the alleged protective guards that existed at the time of installation. Further, no descriptions,

---

[42] *Id.* at p. 10.
[43] No exhibit reference was provided.
[44] Muncie was dismissed from this case in Rec. Doc. No. 169.
[45] Tuthill was dismissed from this case in Rec. Doc. No. 154.
[46] No exhibit reference was provided.
[47] Rec. Doc. No. 127-1, p. 7 n. 34.
29479

drawings, specifications, or photographs of such protecting guarding schemes have been provided, and Plaintiffs offer no evidence of such a protective guard being used by other manufacturers on similar trucks.

First, while the Plaintiffs' briefing leaves much to be desired, the Court must find that they have established the existence of an alternative design by providing evidence of protective guards for the PTO shaft. Under the LPLA, "the plaintiff's burden is not to show that an alternative design was 'feasible,' but instead simply to show that the alternative design was 'in existence' at the time the product left the manufacturer's control."[48] While not specific, the Killingsworth *Affidavit* refers to "inexpensive guarding schemes" that were "available."[49] Furthermore, the Muncie and Tuthill manuals reference guard option for the installer's consideration. The reference to the availability of guards in product installation literature of the manufacturers of both the component parts is sufficient evidence to find that guards were in existence and readily available at the time TransWood installed the PTO shaft assembly onto the truck. As TransWood cited to these manuals, it cannot be argued that TransWood was not aware that such guards existed. Also, the plaintiffs "need not show that the alternative design would have prevented the damages, just that the alternative design would have made the damage significantly less likely."[50] The Court finds that there are disputed issues of fact as to whether a guarded PTO shaft would have made the damages suffered significantly less

---

[48] *Moyer v. Siemens Vai Services,* LLC, No. 11-3185, 2013 WL 3293668 at * 9 (E.D. La. June 28, 2013)(citing *Sisk v. Sears, Roebuck & Co.*, 959 F.Supp. 337, 339 (E.D.La.1996) (citing *Lavespere v. Niagara Machine and Tool Works, Inc.,* 910 F.2d 167, 179–81 (5th Cir.1990); *Morgan v. Gaylord Container Corp.*, 30 F.3d 586, 590 (5th Cir.1994)).
[49] Rec. Doc. No. 135-3, p. 10.
[50] *Id.*, citing *Wilson v. Hovart Corp.*, No. 95–2279, 1996 WL 117502, at *3 (E.D.La. Mar. 15, 1996).
29479

likely and whether the risk of injury to Johnson was outweighed by the cost and burden of installing a guard over the PTO shaft. Perhaps a guarded shaft still would not have prevented Johnson's injuries; however, this is a determination that should be made by the trier of fact.

### 3. Failure to Warn

Plaintiffs also claim that TransWood is liable for failing to adequately warn of the danger associated with the PTO unit. To maintain a failure to warn claim under the LPLA, "a plaintiff must demonstrate that the product in question has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic."[51] The manufacturer is liable for an inadequate warning only if the defect proximately caused the plaintiff's injury.[52] The plaintiff bears the burden of proving that "but for" the inadequate warning, the accident in question would not have occurred.[53]

First, TransWood contends that it did place the appropriate warnings on the truck that Johnson eventually purchased. TransWood submits the *Affidavit* of Chad Beck,[54] who worked as TransWood's Director of General Shops and who directly supervised the mechanics during the relevant time frame who would have installed the PTO and blower on the truck in question. Beck attested that the products were installed in accordance with the Muncie and Tuthill installation manuals. Beck also attested that the customary operating procedure would require TransWood's mechanics to install the warning labels

---

[51] *Stahl v. Novartis Pharmaceuticals Corp.,* 283 F.3d 254, 264 (5th Cir. 2002).
[52] La. R.S. 9:2800.54(A); *see also, Wheat v. Pfizer*, 31 F.3d 340, 342 (5th Cir. 1994).
[53] *See Brown v. Parker–Hannifin Corp.*, 919 F.2d 308, 311 (5th Cir. 1990).
[54] Rec. Doc. No. 127-4.

29479

on the frame of the truck as required by the Muncie manual.[55] Beck further attested that: "After conducting a thorough review, I believe that TransWood's normal practice was followed as it relates to the installation of the blower and application of warning labels and have no reason to believe otherwise."[56]

To the contrary, Plaintiffs contend that Johnson's truck did not contain any such warning at the time of purchase. Further, the November 15, 2014 HAAG report notes that such warning labels regarding the danger of the PTO shaft were documented in photographs of other trucks located on TransWood's property.[57] The report also shows pictures of Johnson's truck on the date of the accident which reveal no warning labels on Johnson's truck.[58] While TransWood offers explanations as to how a warning label may have been removed or worn off over time, there is clearly a material issue of disputed fact regarding whether the appropriate warnings were placed on Johnson's truck at the time of his purchase. Even so, the Court must evaluate whether TransWood had a duty to warn Johnson at all under the sophisticated user doctrine.

The argument that Johnson was a sophisticated user of the products at issue considering his documented experience transporting at least 149 loads with this very truck is persuasive. However, from the existing record, it is unclear whether Johnson fully understood the extent of the danger created by an unguarded PTO, if in fact Johnson was aware that the PTO in question was unguarded. While Johnson was experienced with this truck and experienced loading and unloading powdered lime with this truck and the

---

[55] *Id.* at p. 2.
[56] *Id.*
[57] Rec. Doc. No. 129-2, Conclusion #6.
[58] *Id.*

29479

PTO assembly, there remains material issues as to whether Johnson had been warned of the dangers associated with this particular PTO assembly. There is no evidence that Johnson had been given a Muncie manual or whether Johnson had undergone any specific training relative to the PTO assembly. Thus, the Court cannot determine Johnson's level of knowledge regarding this particular component of his truck's equipment.  Second, simply because one is an "ordinary user" of a product does not necessarily mean that such user has a sophisticated understanding of the product and its attendant risks. While the Court agrees with TransWood that the *Affidavit* of Tremechia Butler[59] should be stricken as it contradicts the previously given answers to Interrogatories,[60] the Court is still unconvinced that, in this case, Johnson was a "sophisticated user" of the PTO assembly system rendering warnings unnecessary.  The Court acknowledges the wealth of evidence submitted by TransWood on this issue; however, the Court finds that Johnson's particular level of sophistication in this case is a fact issue that should be decided by the jury.

In *Moyer v. Siemens Vai Services, LLC*, the district court for the Eastern District of Louisiana noted as follows:

---

[59] Rec. Doc. No. 135-8.
[60] The Court agrees that T. Butler's *Affidavit* is alone insufficient to create a material issue of fact to defeat summary judgment.  However, TransWood relies heavily on the *Affidavit* of Stephen Hooge in support of its summary judgment motion.  While the Court finds Hooge's *Affidavit* more credible than that of T. Butler's, it is precisely this weighing of credibility that the Court is not permitted to make on summary judgment.  The Court is guided by the jurisprudence cited by TransWood in *State Farm Fire & Casualty v. Delta Beverage Group Inc.*, 401 Fed. Appx. 955, 959 (5th Cir. 2010)(holding that an affidavit by someone without personal knowledge of the facts did not constitute evidence sufficient to survive a motion for summary judgment)(citing *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005) ("[The non-moving party's] attempt to create a fact issue as to [an element of the relevant statute] by relying on a conclusory and self-serving affidavit is on unsteady ground."); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) ("[S]elf-serving allegations [in an affidavit by a party] are not the type of significant probative evidence required to defeat summary judgment." (internal quotation marks and citation omitted))).  Both parties in this case have submitted summary judgment evidence by way of Affidavits.  Whether TransWood's witnesses are more credible than Plaintiffs should be determined by a jury and not the Court.
29479

> Whether one owes a duty to warn is ordinarily a question of law; whether or not a particular warning is adequate is a question of fact. *Id.* (citing *Phillips v. K–Mart Corp.*, 588 So.2d 142 (La.App. 3 Cir.1991); *Bloxom v. Bloxom*, 512 So.2d 839, 844 (La.1987)). With respect to the so-called "sophisticated user" affirmative defense set forth in § 9:2800.57(B)(2), however, "if reasonable minds could differ on th[e] question" of whether the manufacturer "knew or reasonably should have been expected to know of the dangerous characteristic of the product that caused the damage," the question of whether the manufacturer owed a duty to warn must be submitted to the jury with a proper instruction. *Swope v. Columbian Chems. Co.*, 281 F.3d 185, 206 (5th Cir.2002).[61]

The Court finds that reasonable minds could differ on the question of whether Johnson was sufficiently knowledgeable of the dangers associated with an unguarded PTO shaft assembly such that there was no duty on the part of TransWood to warn Johnson of the risk of danger in this case.

In light of the evidence submitted by TransWood that the PTO assembly was "installed in an area that is difficult to access unintentionally and the space between the battery box and the blower of approximately six to eight inches is an insufficient distance for a person to squeeze through to access the PTO"[62], the Court cannot conclude that the PTO assembly system presented an "open and obvious" danger. This is a question of fact for the jury. Finally, the Court cannot ascertain from the current record if Johnson was engaged in the "reasonably anticipated use" of the product because the Court cannot determine how or why Johnson became engaged with the PTO.

---

[61] No. 11-3185, 2013 WL 3293668 at *11 (E.D. La. June 28, 2013).
[62] Rec. Doc. No. 127-1, p. 7 n. 34.
29479

### III. CONCLUSION

For the reasons set forth above, TransWood's *Motion for Summary Judgment*[63] is DENIED.  Plaintiffs' *Motion for Partial Summary Judgment*[64] is also DENIED.   A hearing on TransWood's *Motion to Review Magistrate Ruling*[65] will be set prior to a trial date.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on <u>February 11, 2016</u>.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[63] Rec. Doc. No. 127.
[64] Rec. Doc. No. 131.
[65] Rec. Doc. No. 176.
29479